**FILED**
**CLERK**

3/2/2015 10:25 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
NAUDIA REID, o/b/o Roz. B., an infant,

      Plaintiff,

     -against-

FREEPORT PUBLIC SCHOOL DISTRICT,
KISHORE KUNCHAM, Superintendent, NEW
VISIONS MAGNET SCHOOL, RENEE
CRUMP-DEDMON, Principal, JANE DOE, a
New Visions Teacher, Individually and in official
capacity, and three students in the care and
custody of the FREEPORT PUBLIC SCHOOL
DISTRICT, full names unknown,

      Defendants.
--------------------------------------------------------X

**DECISION AND ORDER**
14-cv-4215 (ADS)(GRB)

**APPEARANCES:**

**Ray, Mitev & Associates**
*Attorneys for the Plaintiff*
122 N. County Road
P.O. Box 5440
Miller Place, NY 11764
    By: John W. Ray, Esq.
      Vesselin V. Mitev, Esq., Of Counsel

**Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis**
*Attorneys for the Defendants Freeport Public School District; Kishore Kuncham,*
*Superintendent; New Visions Magnet School; and Renee Crump-Dedmon, Principal*
333 Earle Ovington Boulevard
5th Floor
Uniondale, NY 11553
    By: Laura A. Endrizzi, Esq., Of Counsel

**NO APPEARANCES:**

*The Defendants Jane Doe, a New Visions teacher, Individual and in Official Capacity and three*
*students in the care and custody of the Freeport Public School District, full names unknown*

1

**SPATT, District Judge**.

On June 28, 2014, the Plaintiff Naudia Reid, on behalf of Roz B., an infant (the "Plaintiff") commenced this action in Supreme Court of the State of New York, County of Nassau against the Defendants Freeport Public School District, Kishore Kuncham ("Kuncham"), Superintendent, New Visions Magnet School, Renee Crump-Dedmon ("Crump-Dedmon"), Principal, Jane Doe, A New Visions Teacher, Individually and in their Official Capacities, and three students in the care and custody of the Freeport Public School District, full names unknown (collectively the "Defendants").

The Plaintiff alleges that her daughter, then a first grade student, was sexually assaulted by three fellow female students while in a classroom of the New Visions Magnet School, a school within the Freeport Public School District. The Plaintiff also alleges that the classroom teacher observed the acts and yet did nothing to intervene.

The Court interprets the Plaintiff to be asserting, on behalf of her daughter, a violation of her daughter's Fourth and Fourteenth Amendment rights under the United States Constitution; the tort of negligent supervision or retention under New York law; and a violation of her daughter's rights to be secure in her person under Article 1, § 12 of the New York State Constitution. The Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and disbursements.

On July 9, 2014, the Defendants Freeport School District, Kuncham, New Visions Magnet School, and Crump-Dedmon (the "Freeport Defendants") removed this action to this Court pursuant to the provisions of 28 U.S.C. § 1446(a).

On July 30, 2014, the Freeport Defendants moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint as against them.

For the following reasons, the Court grants the Freeport Defendants' motion.

## I. BACKGROUND

Unless stated otherwise, the following factual allegations are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A. The Parties

At all relevant times, Roz B. was an infant residing in Nassau County, New York. Roz B. is a pseudonym used to "protect her from unwarranted public exposure and humiliation given the nature of the allegations herein, and the fact that [she] is an infant." (Compl., at ¶5.) The true name of Roz B. is known to the Defendants.

At all relevant times, the Plaintiff, a person over 18 years of age and residing in Nassau County, New York, was the mother and natural guardian of Roz B. and, as noted above, now brings this action on Roz B.'s behalf.

The Defendant Freeport Public School District is a public school district organized under and by virtue of the laws of New York State, with schools and offices in Nassau County, New York at 235 North Ocean Avenue, Freeport, New York, 11520.

The New Visions Magnet School is an elementary school within the Freeport School District, located in Nassau County, New York at 80 Raynor Street, Freeport, New York, 11520.

At all relevant times, Kuncham was the Superintendent of the Defendant Freeport Public School District. She resides in Nassau County, New York.

Crump-Dedmon was at all relevant times the Principal of the Defendant New Visions Magnet School. She resides in Nassau County, New York.

Jane Doe was at all relevant times a teacher for the Defendant New Visions Magnet School. Jane Doe allegedly resides in Nassau County, New York.

The three infant defendants were at all relevant times students at the Defendant New Visions Magnet School in Jane Doe's first-grade classroom.

B.  The Underlying Incident

On April 2, 2013, Roz B. and the three infant Defendants were unsupervised in the first-grade classroom of Jane Doe in the Defendant New Visions Magnet School, on the grounds and premises of the Defendant Freeport Public School District.

The Plaintiff alleges, upon information and belief, that the Freeport Public School District and its agents and employees, including but not limited to Kuncham, Crump-Dedmon, and Jane Doe knew or should have known that Roz B. and the three infant Defendants, all then six years old, were left unsupervised in this way.

According to the Plaintiff, "[u]pon information and belief, it was the practice or policy of Defendant Freeport Public School District to regularly abandon, neglect, set aside and/or ignore[] its own established policy and procedures regarding security and supervision procedures as to all students." (Id. at ¶ 24.)

The Plaintiff also alleges that the that Freeport Public School District and its agents and employees, including but not limited to Kuncham, Crump-Dedmon, and Jane Doe had a duty to provide adequate supervision and to use reasonable care to all students under their care and control which they breached when they failed to supervise Roz B. and the three infant Defendants.

However, that day, on April 2, 2013, Roz B. was allegedly cornered by the three infant Defendants near the "cubby" area of the classroom.  The three infant Defendants allegedly held Roz B. down and restrained her against her will and forced her to remove her tights, skirt, and underwear and/or forcibly removed these items.  The three infant Defendants then took turns

"performing various unsolicited, unlawful, unwanted sexually assaultive and abusive acts upon infant Roz B., including but not limited to touching, feeling, and groping her genital area; licking and kissing her genital area, groin[,] and buttocks." (Id. at ¶ 33.)

During this alleged sexual assault, Jane Doe apparently appeared in the classroom, observed the assault, yet did not nothing to intervene or in any way stop or abate the acts of abuse being perpetrated upon Roz B. Rather, Jane Joe allegedly exited the classroom.

The Plaintiff asserts that Freeport Public School District and its agents and employees, including but not limited to Kuncham, Crump-Dedmon, and Jane Doe breached an "existing special duty of care" owed to Roz B. by failing to provide adequate supervision; failed to stop the assault being committed upon her when Jane Doe discovered the assault; and generally failed to timely and thoroughly investigate the assault. The Plaintiff maintains that as a direct and proximate result of this breach of duty, Roz B. was sexually assaulted by her fellow students.

By reason of the foregoing, Roz B. allegedly suffered physical harm, severe emotional harm including but not limited to post-traumatic stress disorder, sex abuse victim trauma syndrome, extreme anguish, loath of schooling, loss of education opportunity, and damage to her reputation.

## II. DISCUSSION

A. Service on the Non-Freeport Defendants

"If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice or order that service be made within a specified time," unless "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m).

A plaintiff is also required to file proof of such service, see Hiller v. Farmington Police Dep't, No. 3:12-CV-1139-(CSH), 2014 WL 992790, at *2 (D. Conn. Mar. 13, 2014). The

district courts in this circuit have generally interpreted Rule 4(m) to require plaintiffs to do so within the aforementioned 120-day period. Id.; Funches v. Connecticut Dep't of Pub. Health, No. 308-CV-1714 (RNC), 2010 WL 122445, at *1 (D. Conn. Jan. 7, 2010)("Plaintiff failed to submit proof of service of process within 120 days of filing the complaint, as required by Fed. R. Civ. P. 4(m)."); Nieves v. Gonzalez, No. 05-CV-00017S (SR), 2006 WL 758615, at *7 (W.D.N.Y. Mar. 2, 2006)(same), although concededly the provision does not expressly require that action. The Court follows this interpretation of Rule 4(m) because to hold otherwise – that is, to hold that failure to file proof of service within the 120-day period does not mandate dismissal of the action – would eviscerate the remedial provisions of Rule 4(m).

In cases that have been removed from state court, "Rule 4(m)'s 120–day period for service begins to run on the date of removal." United Merch. Wholesale, Inc. v. IFFCO, Inc., No. 13-CV-4259 (ADS)(ARL), 2014 WL 4639138, at *7 (E.D.N.Y. Sept. 15, 2014)(quoting G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)(citations and internal quotation marks omitted); The Lee Family v. Int'l Paper Co., No. 1:09-CV-280 (GM), 2010 WL 2949635, at *2 (D. Vt. July 23, 2010)("In the case of a removed action, if service was not performed prior to removal, a plaintiff receives a windfall of 120 days after removal in which to serve process.").

As stated above, the Freeport Defendants removed this action on July 9, 2014. More than 120 days have since elapsed without the Plaintiff filing proof of service of the summons and complaint on the Non-Freeport Defendants, namely Jane Doe and the three infant defendants. Because Plaintiff has failed to file proof of service on these Defendants within the 120–day window or show "good cause" for the delay, Rule 4(m) provides that the Court "must dismiss the action without prejudice . . . or order that service be made within a specified time." Therefore,

the Court dismisses the action against the Non-Freeport Defendants without prejudice.

Richardson v. City of N.Y., No. 11 Civ. 02320 (LGS), 2013 WL 6476818, at *11 (S.D.N.Y. Dec. 10, 2013).

B.  The Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010)(quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

C.  Substantive Due Process

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993); see also Jackson ex rel. Jackson v. Suffolk Cnty., No. 13-CV-394 (JFB)(SIL), 2015 WL 728249, at *7 (E.D.N.Y. Feb. 20, 2015).

Here, the Plaintiff brings claims under Section 1983 for alleged violations of Roz B.'s Fourth and Fourteenth Amendment rights. However, her memorandum of law in opposition to the Freeport Defendant's motion to dismiss does not mention her Fourth Amendment claim. The Court deems this claim abandoned and dismisses it. Obal v. Deutsche Bank Nat. Trust Co., No. 14 CIV. 2463 (RS), 2015 WL 631404, at *10 (S.D.N.Y. Feb. 13, 2015)(dismissing claim as abandoned because the plaintiff failed to address it in his opposition to the motion to dismiss).

The Court now turns to the Fourteenth Amendment claim, which the Court construes as a substantive due process claim. Generally, the Due Process Clause of the Constitution does not require that the state "protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County Dep't of Soc. Services, 489 U.S. 189, 195, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). "The Due Process Clause forbids the state from itself depriving citizens of those rights, but it does not require the state to provide aid, even when it may be necessary." T.K. v. New York City Dep't of Educ., 779 F. Supp. 2d 289, 307 (E.D.N.Y. 2011); DeShaney, 489 U.S. at 195–96, 109 S. Ct. 998 ("The Clause is phrased as a limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security. . . . Its purpose was to protect the people from the State, not to ensure that the state protected them from each other.").

"Nevertheless, there are limited circumstances where the state has created a danger or has a special relationship with an individual, when it will be required to protect a person's right to personal inviolability from private or public abuse." T.K., 779 F. Supp. 2d at 307; see Youngberg v. Romeo, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)(holding that the state must provide involuntarily committed mental patients with services that insure their reasonable safety); Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)

(holding that a state is required to provide medical care to incarcerated individuals); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 533–35 (2d Cir. 1993)(explaining the difference between claims that arise out of a special relationship and those that arise when the state has created the danger).  If it removes an individual's ability to care for himself, "it is only just that the state be required to care for him." DeShaney, 489 U.S. at 198–99, 109 S. Ct. 998 (quoting Estelle, 429 U.S. at 103–104, 97 S. Ct. 285).  Even if one of these exceptions apply, a plaintiff faces the additional hurdle of showing that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 155 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 n. 8 (1998)); see also Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002).

"The Court of Appeals for the Second Circuit apparently has not squarely been presented with a claim that by failing to prevent harm to a student in their care, school officials have violated substantive due process." T.K., 779 F. Supp. 2d at 307.  Where such claims have been brought elsewhere, they have not been successful. See e.g. Hasenfus v. LaJeunesse, 175 F.3d 68, 71–74 (1st Cir. 1999)(rejecting due process claim and finding a lack of a constitutional duty to protect.  Noting that the court was "loath to conclude now and forever that inaction by a school toward a pupil could never give rise to a due process violation . . . . perhaps in narrow circumstances there might be a specific' duty."); Wyke v. Polk County Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997)(relying on DeShaney to find that a school had no duty to protect a student in its care).

"Where an elementary school student is required to attend school, and truancy laws forcing attendance are in effect, that student may be 'owed some duty of care.'" T.K., 779 F.

Supp. 2d at 307 (citation omitted); Pagano v. Massapequa Pub. Schs., 714 F. Supp. 641, 643 (E.D.N.Y. 1989)("We consider elementary school students who are required to attend school, the truancy laws still being in effect, to be owed some duty of care by defendants which may or may not rise to the level required . . . . "). Indeed, "[t]he touchstone of the 'special relationship' exception to the DeShaney rule is the requirement that the state has somehow placed the victim within its custody." Campbell v. Brentwood Union Free Sch. Dist., 904 F. Supp. 2d 275, 280 (E.D.N.Y. 2012).

However, "[i]mportantly, courts are generally in agreement that the 'special relationship' doctrine does not apply to a school setting." Id.; Chambers v. N. Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 764 n. 10 (S.D.N.Y. 2011)(collecting cases); see also S.C. v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-1672 (CS), 2012 WL 2940020, at *8 n. 15 (S.D.N.Y. July 18, 2012). The Court agrees with other courts in this circuit and elsewhere in holding that Roz B.'s status as a student did not put her in the custody of the State at the time of the alleged sexual assault, foreclosing any reliance on the "special relationship" exception to DeShaney. Accord Chambers, 815 F. Supp. 2d at 764 n. 10; Campbell, 904 F. Supp. at 280 (citing Chambers).

The complaint does not specifically mention the "state-created danger" theory of liability. However, "[a] federal pleading is by statement of claim, not by legal theory." Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir. 1991); Newman v. Silver, 713 F.2d 14, 15 n. 1 (2d Cir. 1983); Fed. R. Civ. P. 8(a); see also Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 976 (2d Cir. 1945)(Clark, J.)("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not"). The Court will therefore consider whether the Plaintiff has adequately pleaded this theory of liability.

Under this exception to <u>Deshaney</u>, a plaintiff seeking to state such a claim must show more than the State or its subdivision's general knowledge of a danger; he or she must show that the State assisted in "creating or increasing the danger that the victim faced at the hands of a third party." <u>Matican v. City of New York</u>, 524 F.3d 151, 157 (2d Cir. 2008). The requirement of showing that the State has taken an active role in the deprivation of a right stems from the acknowledgment that due process is, as noted above, defined as a limitation on the acts of the State, and not as a guarantee of state action. <u>Lombardi v. Whitman</u>, 485 F.3d 73, 79 (2d Cir. 2007). Thus, while passive conduct does not therefore fall within the state-created danger exception, <u>id.</u>, the Second Circuit has held that a claim is stated where the defendant's facilitation of a private attack amounts to affirmative conduct necessary to state a due process violation. <u>Pena v. DePrisco</u>, 432 F.3d 98, 109 (2d Cir. 2005); <u>Okin v. Vill. of Cornwall–On–Hudson Police Dep't</u>, 577 F.3d 415, 429 (2d Cir. 2009)(discussing the state created danger doctrine in a case where police officers were alleged to have implicitly encouraged the perpetration of domestic abuse); <u>Lombardi</u>, 485 F.3d at 80 (noting potential liability for a government official whose "affirmative act . . . creates an opportunity for" a third party to harm a victim); <u>see also</u> <u>Campbell</u>, 904 F. Supp. at 280.

"[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." <u>Okin</u>, 577 F.3d at 428 (quoting <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 99 (2d Cir. 1993), <u>overruled on other grounds by</u> <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Moreover, when "state officials communicate to a private person that he . . . will not be arrested, punished, or otherwise interfered with while engaging in

misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." Id. at 428–29 (quoting Pena, 432 F.3d at 111)).  In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." Id. at 429.

Affirmative encouragement of particular violence was held to state a claim in Dwares. There, the Second Circuit held that a due process claim was stated where police officers knew of, and failed to intercede to stop a particular violent attack.  The plaintiff had been assaulted by "skinheads" while a participant in a political rally that involved the burning of an American flag. The defendant police officers witnessed the attack on the victim in Dwares.  Additionally, there was an allegation that the police were informed of the possibility of violence by skinheads at the event, and told the attackers that they would not interfere with an attack on the flag burners. Dwares, 985 F.2d at 98.  Such "prearranged official sanction of privately inflicted injury" was held to state a claim under the Due Process Clause. Id.

Critical to the holding in Dwares, and other cases where the state-created danger has been held to apply, is the fact that an agent of the State, typically a law enforcement officer, was shown to have had a particular relationship with the perpetrator of the violence. Lombardi, 485 F.3d at 80; see also Chambers, 815 F. Supp. 2d at 764 (the state created danger doctrine requires showing of relationship between State and plaintiff's assailant, and not simply a relationship between State and individual attacked).  In Dwares, for example, the officers knew of the impending attack and knew where it would take place, encouraged it to take place, witnessed the attack and failed to intercede on behalf of the victim.  Other state-created danger cases have been

sustained on similar facts. See e.g., Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998)(state-created danger held to exist where police officers returned gun to former police officer/crime victim, took gun owner along to arrest, and allowed shooting).

However, "the state-created danger theory does not impose a duty on [schools] to protect students from assaults by other students, even if Defendants knew or should have known of the danger." S.C., 2012 WL 2940020, at *8 n. 15; see Scruggs v. Meriden Bd. of Educ., No. 03–CV–2224 (PCD), 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007)(collecting cases). The Freeport Defendants would be liable for a substantive due process violation only if the school district or its agents acted affirmatively to put Roz B. in danger, such as encouraging the other students to sexually harass her. Id.; cf. Okin, 577 F.3d at 430–31 (where police officers "openly expressed camaraderie with [domestic abuser] and contempt for [plaintiff-victim]," reasonable factfinder could conclude that officers, by their affirmative conduct, violated plaintiff's due process rights under state-created danger doctrine); Pena, 432 F .3d at 110–11 (finding allegations that defendants stood by and did nothing were insufficient to state a substantive due process claim; allegations that defendants encouraged misconduct sufficient).

Here, even construing the facts most favorably to the Plaintiff, the Court finds that she has failed to plausibly allege a state-created danger theory of liability. Although the Plaintiff adequately pleads egregious and offensive conduct that shocks the conscience, the state-created danger theory of liability requires a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator and witnessing the violence. This requires more than the facts pleaded here.

As the Supreme Court has held, "[t]he Constitution does not provide judicial remedies for every social . . . ill." Lindsey v. Normet, 405 U.S. 56, 74, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972).

With that in mind, on the facts alleged, the Court finds that the Plaintiff's complaint sets forth no plausible claim that the state actors named here actively participated, within the meaning of DeShaney, in the alleged sexual assault on Roz B. The Plaintiff therefore states no substantive due process violation. Accord Chambers, 815 F. Supp. 2d at 767.

Having concluded that the Plaintiff has failed to adequately plead a violation of the United States Constitution, the Court need not address the municipal Defendants' potential liability under Monell v. Dep't of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018 (1978) with respect to the Section 1983 claims. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); Bernshtein v. City of N.Y., 496 F. App'x 140, 144 (2d Cir. 2012)("To the extent that Bernshtein cannot establish Brockmann violated her constitutional rights (through false arrest, malicious prosecution, or excessive detention), the City of New York likewise is not liable on the Monell claims asserting those violations." (citations omitted)); Carrillos v. Inc. Vill. of Hempstead, No. 11-CV-5775 (JFB)(SIL), 2015 WL 728244, at *16 (E.D.N.Y. Feb. 20, 2015)(same).

For the same reason, the Court need not address the Individual Defendants' entitlement to qualified immunity. See Elias v. Vill. of Spring Valley, No. 12-CV-6846 (SAS), 2015 WL 337398, at *7 (S.D.N.Y. Jan. 26, 2015)("because I conclude that there is no evidence that Gilles's Fourth Amendment rights were violated, I need not address qualified immunity."); Boda v. Phelan, No. 11-CV-00028 (KAM), 2014 WL 3756300, at *7 n. 4 (E.D.N.Y. July 30, 2014)(same).

D.  The State Law Claims

"Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." Eskenazi-McGibney v. Connetquot Cent. Sch. Dist., No. 14-CV-1591 (ADS)(GRB), 2015 WL 500871, at *15 (E.D.N.Y. Feb. 6, 2015)(citation and quotation marks omitted); see Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866–1867, 173 L. Ed. 2d 843 (2009)(holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc., 712 F.3d 705, 726 (2d Cir. 2013)("It is a truism of federal civil procedure that in providing that a district court 'may' decline to exercise [supplemental] jurisdiction, § 1367(c) is permissive rather than mandatory." (quotations, brackets, and citation omitted)).

The Court is duty-bound to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over pendent state law claims. Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 117–18 (2d Cir. 2013)(accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720; Lundy, 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010)("[I]f a

15

plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.").

In the case at bar, the Plaintiff argues that this Court should exercise supplemental jurisdiction over her state law claims because, by removing this case to federal court, the Freeport Defendants "chose to put the set of facts of this case as well as Plaintiff's state law causes of actions before this Court." (Pl's Mem., at 10.) However, the Plaintiff does not argue, nor could she, that the Freeport Defendants' removal of this case bars them as a legal matter from later asking this Court to decline supplemental jurisdiction over the state law claims, particularly where, as here, the federal claims have been dismissed. Further, the fact that the Plaintiff originally commenced this action in state court simply speaks to her willingness, at least at a prior point in time, to litigate this case, including the state law claims, in that forum.

Other courts have declined to exercise supplemental jurisdiction over state law claims after dismissal of the federal claims even though the case had been removed by the Defendant. Igolnikov v. Mallah Org., Inc., No. 92 CIV 7199 (SS), 1993 WL 227769, at *4 (S.D.N.Y. June 22, 1993)(declining to exercise supplemental jurisdiction over state law claims following dismissal of federal claims even though the defendant had removed the case and did not seek for Court to decline supplemental jurisdiction over state law claims); Lane v. Clark Cnty., No. 2:11-CV-485 (JCM) (NJK), 2013 WL 592912, at *7 (D. Nev. Feb. 13, 2013)(declining to exercise supplemental jurisdiction over state law claims following dismissal of federal claims even though the defendant had removed the case and despite the fact that the Plaintiff also sought dismissal of state law claims on this basis).

Other factors counsel in favor of declining supplemental jurisdiction over the Plaintiff's state law claims. In particular, the viability of these pendent state claims is purely a matter of

state law which invariably will benefit from adjudication by the final authority on issues of New York state law, namely the New York state courts. Further, the Court notes that this case is still in its infancy, as there has been no scheduling order issued.

In light of the dismissal of all federal claims early in this action, and upon consideration of all relevant factors, namely judicial economy, convenience, fairness and comity, insofar as the complaint may be deemed to state any cognizable claims under state law, the Court declines to exercise supplemental jurisdiction over such claims. The Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of thirty (30) days after the date of this order, unless a longer tolling period is otherwise provided under state law.

### III. CONCLUSION

In this case, as disconcerting and troubling as the allegations leveled against the Defendants are, the Court finds that the Plaintiff has failed to plead a cause of action under federal law against the Freeport Defendants. In particular, as noted above, while the Plaintiff adequately pleads egregious and offensive conduct that shocks the conscience for purposes of a substantive due process violation, the Courts are in agreement that the "special relationship" doctrine does not apply to a school setting. Further, the Plaintiff fails to adequately plead a state-created danger theory of liability, which requires a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator.

Accordingly, the Court grants the Freeport Defendants' Rule 12(b)(6) motion to dismiss the complaint and dismisses the complaint as against them. The Plaintiff's state law claims, however, are dismissed without prejudice to being refiled in state court. See Eskenazi-McGibney, 2015 WL 500871, at *16 (declining, after dismissing federal claims, to exercise

supplemental jurisdiction over state law claims and dismissing those claims without prejudice to being refiled in state court); <u>Mathie v. Womack</u>, No. 14–CV–6577 (JS)(GRB), 2015 WL 419802, at *3 (E.D.N.Y. Jan. 29, 2015)(same).

As noted above, the claims against the remaining defendants are dismissed under Rule 4(m) without prejudice.  The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
March 2, 2015

_Arthur D. Spatt_____
   ARTHUR D. SPATT
United States District Judge